**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF KENTUCKY**
**LOUISVILLE DIVISION**

| | |
|---|---|
| **DAVID GOMERINGER**, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br>v.<br><br>**FIRSTSOURCE SOLUTIONS USA, LLC**<br><br>Defendant. | Case No.: 3:26-cv-45-DJH<br><br>**COLLECTIVE AND CLASS ACTION COMPLAINT**<br><br>**JURY DEMAND** |

**COLLECTIVE AND CLASS ACTION COMPLAINT AND JURY DEMAND**

Plaintiff David Gomeringer ("Plaintiff"), individually and on behalf of all others similarly situated, by and through his attorneys, hereby brings this Collective and Class Action Complaint against Firstsource Solutions USA, LLC ("Defendant") and states as follows:

**PRELIMINARY STATEMENT**

1. This is a collective action brought pursuant to 29 U.S.C. § 216(b) by Plaintiff, individually and on behalf of all similarly situated persons employed by Defendant, arising from Defendant's willful violations of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 *et seq.* This is also a class action brought pursuant to Fed. R. Civ. P. 23 by Plaintiff.

2. Plaintiff and the putative collective members consist of current and former hourly employees who, throughout the relevant period, were subject to Defendant's corporate policy and practice of failing to compensate its hourly employees for all pre-, mid-, and post-shift off-the-clock work.

3. According to Defendant's website, Defendant is a "global business process management partner" and provides operational, technology, and client support services (including

customer service) for businesses in a variety of industries, including healthcare.[1] Defendant purportedly works with other businesses to improve patient experiences and "improve quality of care" in its healthcare division.[2]

4. In order to provide the aforementioned services, Defendant employs or employed hundreds of hourly (non-exempt) employees with a number of job titles, including but not limited to: Customer Service Representatives, Patient Service Representatives, Provider Service Representatives, Floaters/Trainers, Team Leads, and other similar job titles (hereinafter, collectively referred to as "Hourly Employees").

5. Regardless of the specific job title, all Hourly Employees: (1) were paid on an hourly basis; (2) were classified as non-exempt employees; (3) used the same timekeeping system(s); (4) used many (if not all) of the same computer programs; (5) were subject to the same relevant timekeeping and attendance policies; and (6) had the primary job duty of providing assistance to Defendant's customers.

6. In particular, Defendant required its Hourly Employees to begin work prior to their scheduled shifts and perform a number of off-the-clock tasks that were integral and indispensable to their jobs, including booting up computers, logging into numerous software programs, and logging into phones. The Hourly Employees only "clocked in" and received compensation *after* this preliminary work was completed, though they were required to perform this work in order to be "phone ready" when their scheduled shifts began.

7. An Hourly Employee's failure to be "phone ready" when the scheduled shift began

---

[1] *See* About Firstsource | Leaders in Business Process Management Services (last visited January 13, 2026).

[2] *See* Healthcare BPO Services | Hospital BPO Solutions for Payers & Providers (last visited January 13, 2026).

(or when the shift resumed after meal periods), could result in poor schedule adherence scores, poor performance evaluations, warnings, discipline, and possibly termination.

8. Additionally, Defendant required its Hourly Employees to perform similar unpaid tasks during their lunchbreaks, ensuring that they were "phone ready" at the moment their unpaid lunchbreaks ended, and additionally, after their scheduled shifts, logging out of the aforementioned programs and shutting down their computers.

9. The Hourly Employees routinely worked forty (40) hours or more per week before accounting for their off-the-clock work. When the off-the-clock work is included, the Hourly Employees, even those Hourly Employees who were scheduled and paid for only forty (40) hours per week, actually worked over forty (40) hours per week without the required overtime premium for hours worked over forty (40) per week.

10. Defendant, through its managers, had actual and constructive knowledge that its Hourly Employees were completing this off-the-clock work without compensation. Nevertheless, Defendant suffered or permitted, and in fact trained and required, its Hourly Employees to complete this unpaid work.

11. The U.S. Department of Labor ("DOL") recognizes that call center jobs, like those held by Defendant's Hourly Employees, are homogenous. In July 2008, the DOL issued Fact Sheet #64 to alert call center employees to some of the abuses that are prevalent in the industry. *See* **Exhibit A**, DOL Fact Sheet #64: Call Centers under the FLSA, available at *https://www.dol.gov/whd/regs/compliance/whdfs64.pdf.* One of those abuses, which is occurring in this case, is the employer's refusal to pay for work "from the beginning of the first principal activity of the workday to the end of the last principal activity of the workday." *Id*. at p. 2.

12. The DOL's Fact Sheet #64 specifically condemns an employer's non-payment of an employee's necessary pre-shift and post-shift activities: "An example of the first principal activity of the day for agents/specialists/representatives working in call centers includes starting the computer to download work instructions, computer applications, and work-related emails." Additionally, the FLSA requires that "[a] daily or weekly record of all hours worked, including time spent in pre-shift and post-shift job-related activities must be kept." *Id.*

13. Defendant's practice of failing to compensate its Hourly Employees for all hours worked violated the Hourly Employees' rights under the FLSA.

14. Plaintiff brings this action as a collective action, pursuant to Section 216(b) of the FLSA, on behalf of the following Collective:

> ***All current and former Hourly Employees who worked for Defendant at any time during the past three years preceding the filing of this Complaint up through and including judgment.***

15. Defendant is liable for its failure to pay its Hourly Employees for all work performed, and at the appropriate overtime rate for hours worked in excess of forty (40) per week.

16. Hourly Employees who elect to participate in this FLSA collective action seek compensation for all off-the-clock, pre-, mid-, and post-shift work performed for Defendant, an equal amount for liquidated damages, prejudgment interest, and attorneys' fees and costs, pursuant to 29 U.S.C. § 216(b).

## JURISDICTION AND VENUE

17. This Court has subject-matter jurisdiction over Plaintiff's FLSA claims pursuant to 28 U.S.C. § 1331 because Plaintiff's claims raise a federal question under 29 U.S.C. § 201, *et seq*.

18. This Court has diversity jurisdiction over Plaintiff's FLSA claims pursuant to 28 U.S.C. § 1332 because the Named Plaintiff and Defendant reside in different states.

19. Additionally, this Court has jurisdiction over Plaintiff's FLSA collective claims pursuant to 29 U.S.C. § 216(b), which provides that suit under the FLSA "may be maintained against any employer . . . in any Federal or State court of competent jurisdiction."

20. Defendant's annual sales exceed $500,000 and it has more than two employees, so the FLSA applies in this case on an enterprise basis. Defendant's Hourly Employees engaged in interstate commerce and therefore they are also covered by the FLSA on an individual basis.

21. This Court has personal jurisdiction over Defendant because Defendant conducts business within the state of Kentucky, is registered with the Kentucky Secretary of State and is headquartered in the state of Kentucky.

22. Venue is proper in this district and division pursuant to 28 U.S.C. § 1391(b) because Defendant conducts business in this District, and a substantial portion of the events that give rise to the Plaintiff's claims occurred in this District.

23. All of the alleged causes of action can be determined in this judicial proceeding and will provide judicial economy, fairness, and convenience for the parties.

## PARTIES

24. Plaintiff David Gomeringer is a resident of Lexington Springs, Tennessee. Plaintiff worked for Defendant as a non-exempt, hourly employee from his home from approximately August 2023 to October 2024. Defendant compensated Plaintiff for his services as an Hourly Employee in the form of an hourly wage, most recently at the rate of approximately $14.40 per hour. Plaintiff signed a consent to join this collective action lawsuit. **Exhibit B**.

25. Additional putative Collective members were or are employed by Defendant throughout the United States as non-exempt during the past three years and their consent forms will also be filed in this case.

26. Defendant Firstsource Solutions USA, LLC d/b/a MedAssist ("Firstsource") is a Delaware corporation with its principal place of business located at 10400 Linn Station Road, Suite 100, Louisville, Kentucky 40223.

27. Firstsource is a subsidiary of Firstsource Solutions Limited, an India based company whose shares are publicly traded on the National Stock Exchange and the Bombay Stock Exchange.

28. Upon information and belief, Defendant has employed hundreds of Hourly Employees – including Plaintiff – within the past three years and across the United States to assist its customers with their customer service needs.

## GENERAL ALLEGATIONS

29. Prior to hiring prospective Hourly Employees, like Plaintiff, Defendant provided them with a written offer setting forth the job title, the offered rate of pay, and the conditions of their employment.

30. Upon information and belief, Defendant maintains documents that demonstrate the promised hourly wage for each Hourly Employee, including but not limited to: offer letters, paystubs, and/or other payroll records.

31. Plaintiff received an offer from Defendant to work as an Hourly Employee, and he accepted Defendant's offer with the understanding that his base hourly rate would be paid for all hours worked.

32. Plaintiff performed under his agreement with Defendant by carrying out his job duties and responsibilities. More specifically, Plaintiff fielded inbound calls and performed a wide range of support services to those callers with questions. Plaintiff also performed the required unpaid off-the-clock work explained below.

33. Defendant maintains brick and mortar facilities across the country, and also allows for remote work, which provides customer services to Defendant's customers throughout the United States.

34. Defendant paid its Hourly Employees at varying hourly rates.

35. Defendant's Hourly Employees typically work at least eight (8) hours per day, on average five (5) days each week, and up to, and occasion more than forty (40) hours per workweek.

36. There were one or more instances during Plaintiff's employment when he worked forty (40) hours or more in a workweek.

37. Upon information and belief, Defendant utilized a centralized payroll system which calculated overtime pay for all similarly situated employees in the same or similar manner.

38. Once hired, Defendant provides all Hourly Employees with training on, *inter alia*, how to carry out their day-to-day job duties, including how to load and log into their computer programs at the beginning of the day, and how to log out at the end of the day; how to track their time; the importance of attendance and schedule expectations; and Defendant's policies related to each topic. The training Defendant's Hourly Employees received is substantially, if not entirely, the same and all Hourly Employees are subject to the same relevant policies and procedures.

39. At all relevant times, Defendant controlled Plaintiff's and all other Hourly Employees' work schedules, duties, protocols, applications, assignments, and employment conditions.

40. To the extent that Defendant may have had written policies that required its employees to be paid for all hours worked, including overtime, the reality is that Defendant did not follow these policies, which resulted in Hourly Employees like Plaintiff, not being paid for all hours worked, including the off-the-clock work described herein.

41. Plaintiff and other similarly situated Hourly Employees were instructed to be "phone ready" the moment their scheduled shift started. This required Defendant's Hourly Employees to be logged into and have loaded all of their essential work-related computer programs and applications at the start of their shift so they could be prepared to take calls the moment their shift began.

42. Defendant enforced its "phone ready" policy and required its Hourly Employees to perform off-the-clock work through its attendance, compensation, timekeeping, and schedule adherence procedures. Failure to be "phone ready" could result in poor performance evaluations, warnings, discipline, and possibly termination.

43. All of Defendant's Hourly Employees used the same or similar computer networks, software programs, and applications in the course of performing their job responsibilities. These programs and applications were an integral and indispensable part of the Hourly Employees' work and they could not perform their jobs without them.

44. Once training was completed and in order to perform their job, Plaintiff and all other Hourly Employees were required to boot up and log into various computer networks, software programs and applications, in order to access information necessary to perform their job functions. However, Plaintiff and all other Hourly Employees were not actually "clocked in" for their shifts until after the computer boot-up and login process was complete or nearly complete.

45. Defendant had similar policies which required Plaintiff and all other Hourly Employees to perform off-the-clock work when returning from their 30-minute meal periods and preparing themselves to be call ready the moment their meal periods concluded.

46. Plaintiff and all other similarly situated Hourly Employees were also trained or instructed to "clock out" before closing all work applications and systems to make certain they are

"clocked out" the moment they are done fielding calls.

47. At all relevant times, Defendant used its attendance and adherence policies against Plaintiff and its Hourly Employees in order to pressure them into performing, pre-, mid- and post-shift work off-the-clock.

48. The pre-, mid-, and post-shift off-the-clock time Plaintiff and all other Hourly Employees spent booting-up/logging into/shutting down their computers and numerous applications and programs directly benefitted Defendant and was integral and indispensable to the Hourly Employees job responsibilities.

49. As a result of the off-the-clock work described herein, Plaintiff and other Hourly Employees were unlawfully deprived of approximately 15-20 minutes of compensation every shift.

50. Despite knowing Plaintiff and all other Hourly Employees performed this pre-, mid-, and post-shift work, Defendant and its managers failed to make any effort to stop or disallow it and instead suffered and permitted it to happen.

51. Defendant possesses, controls, and/or has access to information and electronic data indicating the times Plaintiff and all other Hourly Employees boot up and log into their computers each day, along with the time they log into their telephone systems.

52. Upon information and belief, Defendant also possesses, controls, and/or has access to information and electronic data indicating when Plaintiff and all other Hourly Employees experience downtime due to technical issues.

53. Because Defendant requires its Hourly Employees to perform pre-, mid-, and post-shift work off-the-clock, the hours tracked in Defendant's timekeeping system were an inaccurate representation of the total amount of time Hourly Employees spent working for Defendant. Thus,

the hours reflected on the Hourly Employees' paystubs are also inaccurate representations of the hours they worked.

54. Despite its ability to track the amount of time Plaintiff and other Hourly Employees spent in connection with the pre-, mid-, and post-shift boot-up, login, shutdown, and logout process and technical downtime, Defendant failed to pay Plaintiff and other Hourly Employees for the off-the-clock work they performed each shift, thus breaching its contracts with its Hourly Employees.

55. Plaintiff, and similarly situated Hourly Employees regularly worked overtime and non-overtime hours for which they were not paid.

**A. Pre-Shift Off-the-Clock Work**

56. The off-the-clock pre-shift process took substantial time on a daily basis, ranging from fifteen (15) to twenty (20) minutes per day, and even longer when Defendant's computer networks and programs were not working properly. Specifically, before each shift, Hourly Employees were required to undertake essential work tasks such as: turning on or waking up their computer; waiting for the computer to turn on; logging into their computer with a username and password; and connecting to Defendant's virtual private network ("VPN") with a username and password; opening various programs and applications that were integral and indispensable to their job duties as Hourly Employees (for example, Defendant's internal system and portal, Microsoft Teams, Service Now, the telephone application, and an authenticator on their phones); and logging in.

57. The Hourly Employees had to complete much, if not all, of this process before: (1) the start of their scheduled shifts; (2) they were allowed to clock into Defendant's timekeeping program; and (3) fielding calls. Consequently, Hourly Employees had to begin working at least

seven (7) to twelve (12) minutes before their scheduled shifts to complete their above-described start-up and log-in activities.

58. The Hourly Employees also frequently encountered technical problems while performing this boot-up and login process which often caused the process to take up to 20 minutes.

59. Defendant's Hourly Employees did not actually log in for their shifts until the start of their scheduled shifts; meaning that Plaintiff and all other Hourly Employees worked off-the-clock for at least seven (7) to twelve (12) minutes (or more) before each shift for which they were never compensated.

60. Thus, in workweeks where Defendant's Hourly Employees worked forty (40) hours or more, or close enough to forty (40) hours to have worked over forty (40) hours when considering the uncompensated off-the-clock work time discussed herein, Defendant violated the FLSA by failing to: (1) pay them the statutorily mandated overtime compensation for all work performed; (2) pay them straight time for all regular hours worked up to forty (40); and (3) record all of the time that its Hourly Employees, including Plaintiff, worked for Defendant's benefit.

61. Defendant had express and constructive knowledge that its Hourly Employees began the pre-shift boot-up and login process while off-the-clock in order to make sure they were "phone ready" and clocked in on time.

62. Defendant also had express and constructive knowledge that its Hourly Employees frequently experienced technical problems with their computers or phones during the boot-up and login process.

63. Defendant's policies and practices discouraged its Hourly Employees from recording all time worked.

64. The pre-shift off-the-clock work Hourly Employees performed directly was compensable, directly benefitted Defendant, and the tasks undertaken in connection with the off-the-clock work were integral and indispensable to their job duties and responsibilities as Hourly Employees.

**B. Mid-Shift Off-the-Clock Work**

65. Defendant promised its Hourly Employees one (1) unpaid 30-to-60-minute meal period each eight (8) hour shift.

66. However, Defendant also required its Hourly Employees to perform off-the-clock work during these unpaid meal periods, including returning from the meal period approximately eight (8) to ten (10) minutes early in order to have enough time to log back in to Defendant's programs and software prior to resuming their shifts. This process was similar to the pre-shift login process described above (albeit abbreviated), and this time went unpaid.

67. According to the U.S. Department of Labor, "[r]est periods of short duration, usually 20 minutes or less, are common in the industry (and promote employee efficiency), and must be counted as hours worked. *Bona fide* meal periods (typically 30 minutes or more) generally need not be compensated as work time as long as the employee is relieved from duty for the purpose of eating a regular meal." **Exhibit A**, Fact Sheet #64 at p. 2.

68. Under federal law, in order to deduct an unpaid meal period from an employee's compensable time, an employee must be completely relieved of his or her employment duties for the entire meal period. 29 C.F.R. § 785.19(a) states:

> ***Bona fide meal periods.*** Bona fide meal periods are not work time. Bona fide meal periods do not include coffee breaks or time for snacks. These are rest periods. The employee must be completely relieved from duty for the purposes of eating regular meals. Ordinarily 30 minutes or more is long enough for a bona fide meal period. A shorter period may be long enough under special conditions. The employee is not relieved if he is required to perform any duties, whether active or inactive, while eating. For example,

> an office employee who is required to eat at his desk or a factory worker who is required to be at his machine is working while eating. (emphasis added).

69. On days when Defendant's Hourly Employees were given a 30-minute meal period, Defendant did not provide Hourly Employees with bona fide meal periods because it required the Hourly Employees to resume taking live calls promptly at the end of their scheduled meal breaks, meaning that the Hourly Employees were required to return to their computer stations prior to the end of their unpaid meal breaks to log back in and reconnect to computer programs.

70. Defendant had express and constructive knowledge that its Hourly Employees took unpaid meal periods and that its Hourly Employees also performed mid-shift off-the-clock work during those unpaid meal periods in order to make sure they were "phone ready" and "clocked in" on time for their shifts to resume.

71. Despite having express and constructive knowledge of its Hourly Employees' mid-shift off-the-clock work, Defendant failed to exercise reasonable diligence to determine the amount of unpaid overtime owed to its Hourly Employees.

72. Because Defendant's Hourly Employees typically worked scheduled shifts of at least forty (40) hours per week, their required mid-shift work was nearly always overtime work, compensable at 1.5 times their regular rate of pay.

73. The unpaid off-the-clock work Plaintiff and other Hourly Employees performed during their meal periods and prior to clocking back into Defendant's timekeeping system was compensable, directly benefitted Defendant, and the tasks undertaken in connection with the off-the-clock work were integral and indispensable to their job duties and responsibilities as Hourly Employees.

**C. Post-Shift Off-the-Clock Work**

74. Pursuant to Defendant's policies, training, and direction, Plaintiff and all other Hourly Employees were required to clock-out before closing all work applications and systems to make certain they were "clocked out" the moment they stopped fielding calls.

75. The off-the-clock post-shift process took substantial time on a daily basis, with said time ranging from three (3) to five (5) minutes per shift.

76. Thus, in workweeks where Defendant's Hourly Employees worked forty (40) hours or more, or close enough to forty (40) hours to have worked over forty (40) hours when considering the uncompensated off-the-clock work time discussed herein, Defendant violated the FLSA by failing to: (1) pay them the statutorily mandated overtime compensation for all work performed; (2) pay them straight time for all regular hours worked up to forty (40); and (3) record all of the time that their Hourly Employees, including Plaintiff, worked for Defendant's benefit.

77. The post-shift off-the-clock work Plaintiff and other Hourly Employees performed was compensable, directly benefited Defendant, and the tasks undertaken in connection with the off-the-clock work were integral and indispensable to their job duties and responsibilities as Hourly Employees.

**D. Technical Down Time**

78. Additionally, in the course of performing their jobs, Plaintiff and other Hourly Employees regularly experienced technical problems with their computer systems, which log them out of the time keeping systems and cause them to redo some or all of the boot up process.

79. In these situations, the Hourly Employees can spend up to twenty (20) minutes or longer working with Defendant's technical team to resolve the problem(s).

80. Defendant is aware of the time Hourly Employees spend experiencing technical difficulties and working with Defendant's technical team to resolve these difficulties, and Defendant can pay Hourly Employees for this time, but does not.

**E. The Off-the-Clock Work Results in Viable "Gap Time" Claims**

81. "Gap time" claims are those "in which an employee has not worked 40 hours in a given week but seeks recovery of unpaid time worked, or in which an employee has worked over 40 hours in a given week but seeks recover for unpaid work under 40 hours." *Kinkead v. Humana at Home, Inc.*, 450 F.Supp.3d 162, 182 (D. Conn. Mar. 31, 2020); *Conner v. Cleveland Cty., N.C.*, 22 F.4th 412, 426 (4th Cir. 2022) ("we hold that overtime gap time claims are cognizable under the FLSA").

82. Plaintiff and similarly situated Hourly Employees, regularly worked non-overtime hours (i.e., "gap time") for which they were not paid.

83. During the weeks that Hourly Employees do not work over forty (40) hours in a workweek, the outcome of Defendant's policies and practices was a deprivation of straight-time wages, in breach of Defendant's contracts with its Hourly Employees.

**F. Defendant Benefitted from the Hourly Employees' Off-the-Clock Work**

84. At all relevant times, Defendant has required and directly benefited from the off-the-clock work performed by Plaintiff and all other Hourly Employees in connection with the pre-shift, mid-shift, and post-shift activities described above.

85. At all relevant times, Defendant has controlled the work schedules, duties, protocols, applications, assignments, and employment conditions of Plaintiff and all other Hourly Employees.

86. At all relevant times, Defendant has been able to track the amount of time Plaintiff and all other Hourly Employees spent in connection with the pre-shift, mid-shift, and post-shift activities; however, Defendant has failed to do so and has failed to compensate Plaintiff and all other Hourly Employees for the off-the-clock work they performed.

87. At all relevant times, Plaintiff and all other Hourly Employees have been non-exempt hourly employees, subject to the requirements of the FLSA.

88. At all relevant times, Defendant used its attendance and adherence policies against Plaintiff and the Hourly Employees in order to pressure them into performing pre-shift, mid-shift, and post shift work off-the-clock.

89. Defendant expressly trained and instructed Plaintiff and all other Hourly Employees to perform these off-the-clock work activities when they were not clocked into Defendant's timekeeping system.

90. Defendant instructed its Hourly Employees to have all work applications and systems fully loaded before the start of their shifts, which took them in the range of fifteen (15) to twenty (20) minutes per day, but Defendant prohibited Hourly Employees from clocking into the timekeeping software before the start of the scheduled shifts while simultaneously requiring the Hourly Employees to be phone/training ready the moment their shifts begin.

91. At all relevant times, Defendant's policies and practices deprived Plaintiff and the Hourly Employees of wages owed for the pre-shift, mid-shift, and post-shift activities they performed.

92. During the weeks that Hourly Employees work over forty (40) hours in a workweek, the outcome of Defendant's policies and practices is a deprivation of overtime wages, which are compensable under the FLSA.

93. Defendant is in possession of the payroll and timekeeping records that will illustrate exactly which weeks Plaintiff worked over forty (40) hours and exactly which weeks he worked under forty (40) hours.

94. Defendant has known or should have known that the time spent by Plaintiff and other Hourly Employees in connection with the pre-shift, mid-shift, and post-shift activities is compensable under the law. Indeed, in light of the explicit DOL guidance cited above, there is no conceivable way for Defendant to establish that they have acted in good faith.

95. Unpaid wages related to the off-the-clock work described herein are owed to Plaintiff at the FLSA-mandated overtime premium of one and one-half the Plaintiff's regular hourly rate because Plaintiff worked in excess of forty (40) hours in a workweek.

**FLSA COLLECTIVE ACTION ALLEGATIONS**

96. Plaintiff brings this action pursuant to 29 U.S.C. § 216(b) of the FLSA on behalf of himself and on behalf of:

> ***All current and former Hourly Employees who worked for Defendant at any time during the past three years preceding the filing of this Complaint up through and including judgment.***

(hereinafter referred to as the "FLSA Collective"). Plaintiff reserves the right to amend this definition if necessary.

97. Defendant is liable under the FLSA for, inter alia, failing to properly compensate Plaintiff and others similarly situated.

98. Excluded from the proposed FLSA Collective are Defendant's executives, administrative and professional employees, including computer professionals and outside sales persons.

99. Consistent with Defendant's policies and practice, Plaintiff and the proposed FLSA Collective were not paid for all straight and/or premium overtime compensation in workweeks during which they worked forty (40) hours or more when considering the uncompensated off-the-clock work discussed herein.

100. All of the work Plaintiff and the proposed FLSA Collective performed was assigned by Defendant, and/or Defendant was aware of all of the work Plaintiff and the proposed FLSA Collective performed.

101. As part of its regular business practice, Defendant intentionally, willfully, and repeatedly engaged in a pattern, practice, and/or policy of violating the FLSA with respect to Plaintiff and the members of the FLSA Collective. This policy and pattern or practice included, but was not limited to:

a. Willfully failing to pay its employees, including Plaintiff and the members of the FLSA Collective, for all overtime gap time and premium overtime wages for hours they worked off-the-clock in excess of forty (40) hours per workweek;

b. Willfully failing to pay its employees, including Plaintiff and the members of the FLSA Collective, for other off-the-clock work, such as the pre-shift boot-up, mid-shift boot-up, and post-shift shut down process; opening and closing all applications, networks and programs and turning and logging off on their computers; and

c. Willfully failing to record all of the time that its employees, including Plaintiff and the members of the FLSA Collective, have worked for the benefit of Defendant.

102. Defendant was aware, or should have been aware, that federal law requires it to pay Plaintiff and the proposed FLSA Collective members for all hours worked and an overtime premium for all hours worked in excess of forty (40) per workweek.

103. Defendant's unlawful conduct was (and is) widespread, repeated, and consistent.

104. Not only was Defendant aware, or should have been aware, that its conduct violates the FLSA, but it has been sued for the same conduct alleged before. *See generally Bernardez v. Firstsource Sols. USA, LLC*, No. 17-cv-613 (W.D. Ky. Oct. 4 2017); *Brown vs. Firsource Solutions USA, LLC,* No. 20-cv-99 (W.D. Ky. Feb. 7, 2020). These cases both settled on a collective-wide basis. *See Bernardez v. Firstsource Sols. USA, LLC,* 2022 WL 1156972 (W.D. Ky. Apr. 19, 2022). Such a scenario strongly suggests that Defendant's conduct regarding Plaintiff and the putative Collective was willful. *See Walsh vs. KDE Equine, LLC,* 56 F.4th 409, 414-416 (6th Cir. 2022).

105. A collective action under the FLSA is appropriate because the employees described above are "similarly situated" to Plaintiff under 29 U.S.C. § 216(b). The employees on behalf of whom Plaintiff brings this collective action are similarly situated because (a) they have been or are employed in the same or similar positions; (b) they were or are performing the same or similar job duties; (c) they were or are subject to the same or similar unlawful practices, policy, or plan; and (d) their claims are based upon the same factual and legal theories.

106. The employment relationships between Defendant and every proposed FLSA Collective member are the same and differ only by name, location, and rate of pay. The key issues are the same for every proposed FLSA Collective member, to wit: whether the FLSA Collective members were (1) required to work uncompensated pre-shift, mid-shift, and post-shift off-the-clock work; (2) entitled to their regular hourly wage in non-overtime workweeks and overtime for hours worked over forty (40) in a week; and (3) the amount of uncompensated pre-, mid-, and post-shift off-the-clock work.

107. Plaintiff estimates the FLSA Collective, including both current and former Hourly Employees over the relevant period, includes hundreds of members. The precise number should be readily available from a review of Defendant's personnel and payroll records.

108. The FLSA Collective should be notified of this action and allowed to opt-in, pursuant to 29 U.S.C. § 216(b). Unless the Court promptly issues such a notice, the FLSA Collective members, who have been unlawfully deprived of pay in violation of the FLSA, will be unable to secure compensation to which they are entitled, and which has been unlawfully, withheld from them by Defendant.

**RULE 23 NATIONWIDE CLASS ALLEGATIONS**

109. Plaintiff brings this action pursuant to Fed. R. Civ. P. 23(b)(2) and (b)(3) on behalf of themselves and on behalf of:

> ***All current and former Hourly Employees who worked for Defendant at any time during the applicable statutory period.***

(hereinafter referred to as the "Rule 23 Nationwide Class"). Plaintiff reserves the right to amend this definition if necessary.

110. The members of the Rule 23 Nationwide Class are so numerous that joinder of all Rule 23 Nationwide Class members in this case would be impractical. Plaintiff reasonably estimates there are hundreds of Rule 23 Nationwide Class members. Rule 23 Nationwide Class members should be easy to identify from Defendant's computer systems and electronic payroll and personnel records.

111. There is a well-defined community of interests among Rule 23 Nationwide Class members and common questions of law and fact predominate in this action over any questions affecting individual members of the Rule 23 Nationwide Class. These common legal and factual questions, include, but are not limited to, the following:

a. Whether the pre-shift Rule 23 Nationwide Class members spent on start-up and login activities for each shift is compensable time under applicable law;

b. Whether the mid-shift time Rule 23 Nationwide Class members spent on truncated start-up and login activities each shift is compensable time under applicable law;

c. Whether the post-shift time Rule 23 Nationwide Class members spent closing all programs, applications and networks is compensable time under applicable law;

d. Whether Defendant's non-payment of wages for all compensable time amounted to a breach of contract; and

e. Whether Defendant's non-payment of wages for all compensable time resulted in an unjust enrichment to Defendant.

112. Plaintiff's claims are typical of those of the Rule 23 Nationwide Class in that they and all other Rule 23 Nationwide Class members suffered damages as a direct and proximate result of Defendant's common and systemic payroll policies and practices. Plaintiff's claims arise from the same pay policies, practices, promises and course of conduct as all other Rule 23 Nationwide Class members' claims and their legal theories are based on the same legal theories as all other Rule 23 Nationwide Class members.

113. Plaintiff will fully and adequately protect the interests of the Rule 23 Nationwide Class and Plaintiff retained counsel who are qualified and experienced in the prosecution of wage and hour class actions. Neither Plaintiff nor his counsel have interests that are contrary to, or conflicting with, the interests of the Rule 23 Nationwide Class.

114. A class action is superior to other available methods for the fair and efficient adjudication of this controversy, because, inter alia, it is economically infeasible for Rule 23 Nationwide Class members to prosecute individual actions of their own given the relatively small amount of damages at stake for each individual along with the fear of reprisal by their employer.

115. This case will be manageable as a Rule 23 Class action. Plaintiff and his counsel know of no unusual difficulties in this case and Defendant has advanced networked computer and payroll systems that will allow the class, wage, and damages issues in this case to be resolved with relative ease.

116. Because the elements of Rule 23(b)(3) are satisfied in this case, class certification is appropriate. *Shady Grove Orthopedic Assoc., P.A. v. Allstate Ins. Co*., 559 U.S. 393, 398 (2010) ("[b]y its terms [Rule 23] creates a categorical rule entitling a plaintiff whose suit meets the specified criteria to pursue his claim as a class action").

117. Because Defendant has acted and refused to act on grounds that apply generally to the Rule 23 Nationwide Class and declaratory relief is appropriate in this case with respect to the Rule 23 Nationwide Class as a whole, class certification pursuant to Rule 23(b)(2) is also appropriate.

## COUNT I
## VIOLATION OF THE FAIR LABOR STANDARDS ACT, 29 U.S.C. § 201, *et seq.* -- FAILURE TO PAY OVERTIME

118. Plaintiff re-alleges and incorporates all previous paragraphs herein.

119. At all times relevant to this action, Defendant has been subject to the mandates of the FLSA, 29 U.S.C. § 201, et seq.

120. At all times relevant to this action, Defendant has been engaged in interstate commerce, or in the production of goods for commerce, as defined by the FLSA.

121. At all times relevant to this action, Plaintiff and the FLSA Collective members were "employees" of Defendant within the meaning of 29 U.S.C. § 203(e)(1) of the FLSA.

122. At all times relevant to this action, Defendant "suffered or permitted" Plaintiff and the FLSA Collective members to work and thus "employed" them within the meaning of 29 U.S.C. § 203(g) of the FLSA.

123. Plaintiff and other FLSA Collective members, by virtue of their job duties and activities actually performed, were all non-exempt employees.

124. Plaintiff either: (1) engaged in commerce; or (2) engaged in the production of goods for commerce; or (3) was employed in an enterprise engaged in commerce or in the production of goods for commerce.

125. The FLSA requires an employer to pay employees for all hours worked and the federally mandated overtime premium rate of 1.5 times their regular rate of pay for every hour worked in excess of forty (40) hours per workweek. 29 U.S.C. § 207.

126. The FLSA also requires all employers to keep accurate payroll records and time records for at least three (3) years (including all basic timecards and daily starting/stopping times of individual employees.) *See* 29 U.S.C. § 211(c); 29 C.F.R. 516.1, *et seq*.

127. At all times relevant to this action, Defendant engaged in an unlawful policy and practice of requiring Plaintiff and the FLSA Collective members to perform off-the-clock work, every shift, and failed to pay these employees overtime gap time in weeks where it occurred, and the federally mandated overtime compensation for all work performed over forty (40) hours per week.

128. The off-the-clock work performed every shift by Plaintiff and the proposed FLSA Collective was an integral and indispensable part of their jobs and these activities and the time associated with these activities was significant.

129. Defendant could have easily accounted for and properly compensated Plaintiff and the proposed Collective members for all work activities, but did not.

130. In the aggregate, the amount of Plaintiff's and the proposed Collective members' uncompensated time amounted to hours of uncompensated time per week and, over the three-year statutory period, was not *de minimis*.

131. In workweeks where Plaintiff and other FLSA Collective members worked forty (40) hours or more, or close enough to forty (40) to have worked over forty (40) hours when considering the uncompensated off-the-clock work time discussed herein, all of this overtime should have been paid at the federally mandated rate of 1.5 times each employee's regular hourly wage, including a shift differential where applicable. 29 U.S.C. § 207. Further all "gap time" should have been paid at Plaintiff and the FLSA Collective's regular hourly rate.

132. As a result of Defendant's unlawful policies and practices, Plaintiff and the FLSA Collective members were deprived of both straight-time and overtime wages in violation of the FLSA.

133. At all relevant times, Defendant had a policy and practice of willfully refusing to pay Plaintiff and the FLSA Collective members the legally required amount of overtime compensation for all hours worked in excess of 40 hours per workweek, in violation of the FLSA.

134. As a result Defendant's willful failure to compensate Plaintiff and the putative FLSA Collective members at a rate not less than 1.5 times the regular rate of pay for work performed in excess of 40 hours in a workweek, Defendant violated and continues to violate the FLSA, 29 U.S.C. §§ 201, *et seq.,* including but not limited to 29 U.S.C. §§ 207(a)(1), 215(a), and 29 C.F.R. §§ 778.104. Defendant's conduct as alleged herein constitutes a willful violation of the FLSA within the meaning of 29 U.S.C. § 255(a).

135. As a result of the foregoing, Plaintiff and all others similarly situated are entitled to backpay as well as liquidated damages in an amount equal to their back pay. As a result of Defendant's FLSA violations, Plaintiff and all others similarly situated are owed overtime wages at a rate to be calculated by taking the difference between the overtime they should have received for each workweek and the overtime they did receive during the same time period. The exact amount can be readily determined using payroll and other employment records Defendant is statutorily required to maintain under FLSA 29 U.S.C. § 211(c).

136. The FLSA, 29 U.S.C. § 216(b), provides that as a remedy for a violation of the Act, an employee is entitled to his or her unpaid wages (including unpaid overtime), plus an additional equal amount in liquidated damages (double damages), plus costs and reasonable attorneys' fees.

## COUNT II
## RULE 23 NATIONWIDE CLASS ACTION
## NATIONWIDE BREACH OF CONTRACT

137. Plaintiff re-alleges and incorporates all previous paragraphs herein and further alleges as follows.

138. At all times relevant to this action, Defendant had a binding and valid contract with Plaintiff and every other Rule 23 Nationwide Class member to pay each employee for each hour they worked at a pre-established (contractual) regular hourly rate in consideration of the work duties Plaintiff and the Rule 23 Nationwide Class members performed on behalf of Defendant.

139. Evidence of these contracts include Defendant's letters offering employment, pay statements, and other documentary evidence in Defendant's possession. Additionally, Defendant made verbal offers for payment at a specified, above minimum wage for Hourly Employee work, which Plaintiff and the Rule 23 Nationwide Class members accepted and performed, but

Defendant failed to perform by paying Plaintiff and the Rule 23 Nationwide Class the promised wages.

140. Each Rule 23 Nationwide Class member's contractual hourly rate is identified in paystubs and other records that Defendant prepares as part of its regular business activities.

141. For example, Defendant offered to compensate Plaintiff at a minimum of $14.40 per hour if he agreed to perform services for Defendant as an Hourly Employee. Plaintiff accepted Defendant's offer and performed his duties as an Hourly Employee in reliance on the offer.

142. Defendant breached its contractual promises by failing to pay Hourly Employees at their fixed, pre-agreed upon hourly rate for all of the hours worked.

143. Upon information and belief, each Rule 23 Nationwide Class member, including Plaintiff, was contractually entitled to an agreed upon hourly rate over the mandated minimum wage within the applicable period.

144. Plaintiff and every other Rule 23 Nationwide Class member accepted the terms of Defendant's contractual promises contained in Defendant's offer letters, and performed under the contracts by doing their jobs and carrying out the work they performed each shift, which included the unpaid off-the-clock work that was required of them in connection with pre-shift, mid-shift, and post-shift work described herein.

145. By not paying Plaintiff and every other Rule 23 Nationwide Class member the agreed upon hourly wage for the work they performed each shift in connection with the off-the-clock work described herein, Defendant systematically breached its contracts with Plaintiff and each member of the Rule 23 Nationwide Class.

146. Defendant can easily ascertain the amount of damages owed to Plaintiff and the Rule 23 Nationwide Class members based on the allegations made in this complaint (specifically

the amount of off-the-clock work claimed each shift) in conjunction with Defendant's payroll records, which will provide the number of shifts worked by each Rule 23 Nationwide Class member.

147. Plaintiff and the Rule 23 Nationwide Class members' remedies under the FLSA are inadequate in this case to the extent Defendant paid them more than the federally mandated minimum wage of $7.25 per hour, but less than forty (40) hours per week (i.e., pure "gap time" claims for non-overtime hours/workweeks).

148. Defendant also breached its duty of good faith and fair dealing by failing to keep track of the time Plaintiff and other Rule 23 Class members spent performing off-the-clock activities, which is a fundamental part of an "employer's job."

149. As a direct and proximate result of Defendant's contractual breaches, Plaintiff and the Rule 23 Nationwide Class members were damaged in an amount to be determined at trial.

**COUNT III**
**RULE 23 NATIONWIDE CLASS ACTION**
**NATIONWIDE UNJUST ENRICHMENT**

150. Plaintiff re-alleges and incorporates all previous paragraphs herein.

151. This Count is pled in the alternative to Count II, *supra*, pursuant to Fed. R. Civ. P. 8(d)(2)-(3).

152. At all times relevant to this action, Defendant promised Plaintiff and every other Rule 23 Nationwide Class member a pre-established regular hourly rate in consideration of the work duties Plaintiff and the Rule 23 Nationwide Class members performed for the benefit of Defendant.

153. Plaintiff and every other Rule 23 Nationwide Class member relied upon Defendant's promise for the pre-established regular hourly rate and performed by doing their jobs and carrying out their required work duties.

154. By not paying Plaintiff and every other Rule 23 Nationwide Class member the agreed upon hourly wage for the off-the-clock work they performed each shift, Defendant was unjustly enriched.

155. Plaintiff and the Rule 23 Nationwide Class members performed off-the-clock work tasks at the request of and without objection by Defendant.

156. Defendant received and accepted the above-referenced off-the-clock work services from Plaintiff and every other Rule 23 Nationwide Class member and enjoyed the benefits derived therefrom.

157. Despite this, Defendant did not pay Plaintiff and the Rule 23 Nationwide Class members for all of their work.

158. Defendant has been unjustly enriched by the retention of monies received pursuant to the services Plaintiff and the Rule 23 Nationwide Class performed for Defendant's benefit, without having compensated Plaintiff and the Rule 23 Nationwide Class for the same.

159. Plaintiff and the Rule 23 Nationwide Class suffered detriment due to Defendant's failure to compensate them for the off-the-clock work described herein, in that Plaintiff and the Rule 23 Nationwide Class were deprived of the ability to utilize that time, effort and their resources in a profitable manner.

160. As a direct and proximate result of Defendant's actions, Plaintiff and every other Rule 23 Nationwide Class member suffered damages, including but not limited to, loss of wages.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff David Gomeringer, on behalf of himself and on behalf of the putative FLSA Collective and the Rule 23 Nationwide Class, requests the following relief:

a. An Order for the issuance of Court-authorized notice of this FLSA collective action in accordance with 29 U.S.C. § 216(b) with respect to the FLSA claims set forth herein (Count I);

b. An order requiring Defendant to disclose in computer format, or in print if no computer readable format is available, the names and addresses of all proposed Collective members, and permitting Plaintiff to send notice of this action to all those individuals, including the publishing of notice in a manner that is reasonably calculated to apprise the Collective members of their rights by law to join and participate in this lawsuit;

c. An order certifying this action as a class action (for the Rule 23 Nationwide Class) pursuant to Rule 23(b)(2) and (b)(3) with respect to Plaintiff's breach of contract and unjust enrichment claims (Counts II and III);

d. An order designating Plaintiff David Gomeringer as the Representative of the FLSA Collective and the Rule 23 Nationwide Class and undersigned counsel as Class/Collective counsel for the same;

e. An order declaring Defendant violated the FLSA and the Department of Labor's attendant regulations as cited herein;

f. An order declaring Defendant's violations of the FLSA were willful;

g. An order declaring Defendant breached its contracts with Plaintiff by failing to pay Plaintiff and the Rule 23 Nationwide Class for each hour they worked at a pre-established (contractual) hourly rate;

h. An order declaring Defendant was unjustly enriched through its failure to pay Plaintiff and the Rule 23 Nationwide Class for the off-the-clock work discussed herein;

i. An order granting judgment in favor of Plaintiff and the proposed Collective members as against Defendant and awarding Plaintiff, the FLSA Collective members and the Rule 23 Nationwide Class the full amount of damages and liquidated damages available by law;

j. An order awarding reasonable attorneys' fees and costs incurred by Plaintiff in filing this action as provided by statute;

k. An order awarding pre- and post-judgment interest to Plaintiff on these damages; and

a. An Order awarding such other and further relief as this Court deems appropriate.

**JURY DEMAND**

Plaintiff, individually and on behalf of all others similarly situated, by and through his attorneys, hereby demand a trial by jury pursuant to Rule 38 of the Federal Rules of Civil Procedure and the court rules and statutes made and provided with respect to the above-entitled cause.

Dated: January 21, 2026

Respectfully Submitted,

*/s/David W. Garrison*________________

David W. Garrison (KY Bar. No. 98258)
**BARRETT JOHNSTON MARTIN & GARRISON, PLLC**
200 31st Avenue North
Nashville, Tennessee 37203
Telephone: (615) 244-2202
dgarrison@barrettjohnston.com

Mark R. Miller*
Julia Ozello*
**WALLACE MILLER**
200 W. Madison St., Suite 3400
Chicago, Illinois 60606
Telephone: 312-261-6193
mrm@wallacemiller.com
jo@wallacemiller.com

**Pro Hac Vice* Applications Forthcoming

*Attorneys for Plaintiff, Putative Opt-In Plaintiffs, and the Putative Class*